CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED
September 08, 2025
LAURA A. AUSTIN, CLERK
BY: /s/ S. Wray
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Criminal No. 7:19-cr-00036-2 |
| v. | ) |
| | ) By: Elizabeth K. Dillon |
| AMY NICOLE CHILDRESS | ) Chief United States District Judge |

**MEMORANDUM OPINION AND ORDER**

Pending before the court and addressed herein are several motions filed by the pro se defendant Amy Nicole Childress. In the first, a letter motion, she asks that the court "reconsider" her sentence, reduce her sentence,[1] and/or order her federal sentence to run concurrently with the Tenneessee state sentence she was serving at the time of that letter, although she was transferred to federal custody days later.[2] (Dkt. Nos. 271, 272.) That motion also is supported by a sealed letter sent by a woman with ties to Childress's family that includes, at Childress's request, over 150 pages of documents showing courses and classes that Childress has taken while incarcerated. (Dkt. No. 270.)

Childress subsequently filed another motion to run her state and federal sentences concurrently, and the court received a supporting letter from an individual who describes Childress as a "dear friend." (Dkt. Nos. 273, 274.) Lastly, Childress sent an additional letter to the court reiterating her request for a concurrent sentence and asking for confirmation that her motion had been received, in response to which the Clerk sent a confirmation and copy of the docket sheet. (Dkt. No. 295.) The court has considered all the filings. For the reasons set forth herein, Childress's motions will be denied.

---

[1] In a subsequent letter, Childress states that she is not seeking a reduced sentence; she is only seeking that the court run her federal sentence concurrent with her state sentence. (Ltr. Mot. 2, Dkt. No. 295.) But her requested revision to her sentence (to run it partially concurrent with her state sentence) would effectively be a reduction in sentence, and the analysis is the same regardless of the title of her motion.

[2] The same motion was filed twice (Dkt. Nos. 271, 272) because the first time, it included a non-viewable letter.

I. BACKGROUND

Childress and three co-defendants were charged in a multi-count indictment in March 2019. Childress was charged in two counts: (1) conspiracy to distribute 500 grams or more of a mixture containing methamphetamine (Count 1); and (2) distribution of methamphetamine (Count 2). (Dkt. No. 12.) She pled guilty to Count 1 pursuant to a written plea agreement that required the United States to dismiss Count 2. (Dkt. Nos. 108, 109). The plea agreement also included a stipulation that her base offense level, before any career offender enhancement, was a 30, based on her being held responsible for at least 500 grams but less than 1.5 kilograms of a mixture containing methamphetamine. (*See* Dkt. No. 109.)

At her January 10, 2020 sentencing, Childress was held responsible for the agreed-upon amount. Because she was a career offender, however, the higher base offense level of 37 applied. Coupled with her criminal history category VI, her advisory guideline range was 262 to 327 months. The court sentenced Childress to a 162-month term of imprisonment, to be followed by a supervised release term of 5 years. (Minutes, Dkt. No. 122; Judgment, Dkt. No. 129.) She did not appeal and has not filed a 28 U.S.C. § 2255 motion.

Because Childress complains in her pending motions that some of her co-defendants received lesser sentences, the court briefly notes the sentences received by them, although as discussed herein, it does not consider any of those defendants to be similarly situated and all of them had lower applicable guideline ranges than Childress. The first co-defendant, Carlos Tiawan Minnis, whom the court considers the most culpable of the four defendants charged in the conspiracy case, was sentenced to 70 months. (Dkt. No. 268.) The other two defendants— Alissa Joy Goad and Ashley Robertson Brown—were held responsible for a slightly higher amount of drugs than Childress, although Goad's base offense level was the same as hers—a 30—and Brown's was a 32. (Goad Presentence Investigation Report (PSR) ¶ 39, Dkt. No. 237;

Brown PSR ¶ 36, Dkt. No. 99.)  Both Goad and Brown also qualified for the statutory safety valve, although not the guidelines safety valve.  (Dkt. Nos. 257, 132.)  Without the safety valve reduction, the court determined that Goad's guideline range was 87 to 108 months, but with it, her range was 70 to 87 months.  (Goad Statement of Reasons 5, Dkt. No. 257.)  The court sentenced Goad to 40 months.  (Goad J., Dkt. No. 256.)  Similarly, Brown's guideline range with the safety valve was 121 to 151 months, but with the safety valve, the range was 100 to 125 months.  (Brown Statement of Reasons 1, 5, Dkt. No. 132.)  The court sentenced Brown to 72 months.  (Brown J., Dkt. No. 131.)

## II.  DISCUSSION

Once a federal sentence has been imposed, there are only limited circumstances under which a court may revisit or amend it.  *See generally* 18 U.S.C. § 3582(b)–(c) (setting forth circumstances under which a term of imprisonment may be modified).  As discussed next, Childress does not state grounds in her motion that qualify.

**A. Motion for Concurrent Sentences**

Childress's primary request is that the court revise her sentence and order it to run concurrent with at least part of a subsequent state sentence in Tennessee, which was imposed because she violated multiple terms of her state probation in Tennessee.  Specifically, she contends that the court should run her federal sentence concurrent either from the date she was taken into federal custody (August 16, 2019) or from the date sentence was imposed (January 10, 2022) until she was released from state custody on December 27, 2022.  (Dkt. No. 295, at 2.)  Using the earlier of those dates would effectively reduce her sentence by about three years and four months; using the later date would reduce her sentence by about eleven months.

In support of her request, Childress contends that her sentence is unduly harsh relative to her co-defendants, given their respective roles in the conspiracy; she points to her rehabilitation

3

efforts while incarcerated; and she explains in some detail mental health difficulties and other difficulties that her daughter—14 at the time of sentencing in 2019 and now an adult—is experiencing. At bottom, she insists that the court got it wrong in imposing her sentence and sentenced her too harshly. That is not a valid ground for modifying a sentence. *Cf.* 18 U.S.C. § 3582(b)–(c). In any event, the court did not err and would not now run her sentence concurrent even if it could do so, for several reasons.

1. **Differences in her sentence and her co-defendants' sentences were justified by each defendant's specific circumstances.**

First, the court addresses Childress's assertion that her sentence was unduly harsh compared to her co-conspirators' sentences, rendering it unfair and something the court should correct. Because of this argument, the court has reviewed the sentences of all the defendants in this case and the court's stated reasons for imposing each. Childress may believe the sentences were unfair. But in imposing them, the court considered the specific circumstances relevant to each defendant and considered each defendant's specific characteristics, as required by 18 U.S.C. § 3553(a). And while one of the § 3553(a) factors is that the court must impose a sentence to avoid unwarranted sentencing disparities, the disparities in sentences here were warranted by each co-defendant's characteristics and the circumstances concerning each.

By way of example only, Childress's guideline range was significantly higher than both Goad and Brown, in part because she was determined to be a career offender, while they both qualified for the statutory safety valve.[3] Also, Childress had 19 criminal history points and had a criminal history category of VI, even without the career offender designation. (PSR ¶¶ 60–61.)

---

[3] Childress acknowledges her "extensive criminal history" in her most recent letter. (Dkt. No. 295, at 1.) But she insists that her lesser involvement in the offense makes it unfair and means that she did not deserve a sentence of "one hundred and two months more than everyone involved in this indictment including" Minnis. (*Id.*)

In fact, regarding those two co-defendants, both the bottom end and the top end of Childress's guideline range were more than double that of Brown and almost triple that of Goad's. Thus, she was not similarly situated to either of them. Likewise, the bottom end of her guideline range was 80 months higher than the most culpable defendant, Minnis.

Furthermore, the court sentenced her to a sentence significantly below the applicable guideline range. (PSR ¶ 84; *see also* Statement of Reasons 5, Dkt. No. 130.) And in doing so, it noted that she was less culpable than others involved and noted her long-time battle with mental health issues and addiction. (Statement of Reasons 5.) Thus, the court took into account her lesser culpability, and she received a significant reduction from her guideline range as a result.

Lastly, and despite Childress's insistence that if Minnis had been sentenced before her, the court "would have imposed a lesser sentence," the court continues to believe that the sentence imposed on Childress was appropriate, and that the reasons for lesser sentences for the other defendants were all warranted in light of each of their specific circumstances.

**2. The court did not impose a concurrent sentence at the time of sentencing.**

As noted, Childress's request for a concurrent sentence is effectively a request that the court correct a sentence that Childress believes erroneous. It is true that the court likely had authority to run her sentence concurrent, partially concurrent, or consecutive to her anticipated state sentence. Specifically, Childress's state probation violation arrest warrant was based not only on her conduct in this offense, but it also included significant additional misconduct by her. Indeed, Childress's probation warrant accused her of violating numerous terms of her Tennessee probation based on a wide range of conduct. So, even if her state sentence imposed upon revocation was *partially* based on her conduct in this case, it was not entirely based on such conduct. Thus, the court had the authority to run a sentence consecutive, concurrent, or partially concurrent with the anticipated state sentence. U.S.S.G. § 5G1.3(d).

The court notes, though, that it was aware of the anticipated state sentence that Childress faced (as well as separate charges against her, which that court later dismissed) at the time that it sentenced Childress, because those facts were referenced in her PSR. The PSR noted that Childress had been taken into federal custody via writ from Tennessee state custody and that there were detainers lodged against her from Washington County Circuit Court and Scott County Circuit Court, both in Virginia. (PSR 2, Dkt. No. 118.) It also noted that she faced pending charges for distribution of a schedule I or II drug for profit and selling drugs near a school. (*Id.* ¶ 64.) It discussed at length the Tennessee case in which her later probation revocation sentence was imposed, specifically noting that she was under a criminal justice sentence in Tennessee at the time of the offense. (*Id.* ¶¶ 55, 60.) Thus, the court was aware of all those facts when it sentenced her. (PSR ¶¶ 60, 64.)

As Childress notes, despite that knowledge, the court declined to impose a concurrent or partially concurrent sentence at that time. And she has not presented anything to change the court's mind about that decision. Although the court recognizes its authority in certain circumstances to do so, *see Setser v. United States*, 566 U.S. 231, 236 (2012), this court generally does not lower an otherwise appropriate sentence to account for an anticipated state sentence since it has no knowledge of what sentence that state court is likely to impose.

Importantly, moreover, application note 4(c) to U.S.S.G. § 5G1.3 recommends, in an analogous circumstance, that the sentences should run consecutively. In particular, where a defendant was on state probation and that probation was revoked before her federal sentencing, that note recommends that the federal sentence be imposed consecutively to the sentence imposed for the revocation. While that application note is not technically applicable here (since Childress had an *anticipated* revocation of probation, not one already imposed), the same rationale applies. The rationale for that recommendation is plain: a revocation sentence is

intended to sanction the "violator for failing to abide by the conditions of the court-ordered supervision, leaving the punishment for any new criminal conduct to the court responsible for imposing the sentence for that offense." *United States v. Lewis*, 90 F.4th 288, 298 (4th Cir. 2024) (quoting U.S.S.G. ch. 7, pt. A, n.3(b)). Similarly, Childress's revocation sentence was imposed by the state court for her failure to abide by many conditions of probation; this court imposed punishment for her offense in this case separately. Because they are punishing different conduct, consecutive sentences in this context make sense.

For the foregoing reasons, the court does not have authority to reduce Childress's sentence at this point, and even if it did, the court would not do so. Thus, Childress's motion for concurrent sentences will be denied.[4]

## B. Motion for Compassionate Release[5]

Interpreting Childress's pending motions liberally, the court also could treat them as seeking either a reduction or concurrent sentences pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), commonly referred to as the compassionate release provision. That statute provides a statutory vehicle to modify a defendant's sentence under certain circumstances. As amended by the First Step Act and in pertinent part,[6] the statute

---

[4] If Childress believes that the Bureau of Prisons (BOP) has improperly calculated her sentence, she must first exhaust her remedies with the BOP regarding that issue and may be able to file a petition for habeas corpus under 28 U.S.C. § 1441, which should be filed in the district court where she is incarcerated. The court does not view her motion as asserting an error on the BOP's part, however.

[5] In her latest letter, received in May 2025, Childress states that she is "in the process of filing a compassionate release" motion. (Dkt. No. 295.) To date, she has not done so. In conjunction with that statement, she notes that while her initial motion has been pending, her father has passed away and her adult daughter is pregnant with another child and continues to experience a decline in mental health. The court does not consider allegations concerning her father or her daughter's pregnancy because they were not referenced in the motions pending before the court and because she referenced them in conjunction with a *forthcoming* motion for compassionate release. It has considered her assertions regarding her daughter's health to the extent those facts are set forth in her pending motions.

[6] Prior to the First Step Act of 2018, only the BOP could seek relief in court under the statute. The First Step Act changed the statute to allow a federal inmate to file a motion for compassionate release directly with the court after exhausting his administrative remedies.

> authorizes a court, in its discretion, to reduce a term of imprisonment after it has (1) considered the [18 U.S.C.] § 3553(a) factors for imposing a sentence, (2) found that "extraordinary and compelling reasons warrant such a reduction," and (3) found that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."

*United States v. Crawley*, 140 F.4th 165, 169 (4th Cir. 2025) (quoting 18 U.S.C. § 3582(c)(1)(A)); *United States v. Centeno-Morales*, 90 F.4th 274, 279 (4th Cir. 2024). In 2023, the Commission issued an amended policy statement setting forth a non-exhaustive list of circumstances which may individually or in combination constitute "extraordinary and compelling" reasons for a sentence reduction. *See* U.S.S.G. § 1B1.13. That policy statement governs Childress's motion. *Crawley*, 140 F.4th at 170.

The defendant bears the burden of showing that extraordinary and compelling reasons exist. *See United States v. Hargrove,* 30 F.4th 189, 195 (4th Cir. 2022) (noting that the inmate provided information "to carry his burden of demonstrating that his medical conditions served as an extraordinary and compelling reason for release"). And "[a] movant for compassionate release bears the burden of showing why the § 3553(a) factors justify a modified sentence." *Centeno-Morales*, 90 F.4th at 279.

To the extent Childress's motions could be construed as compassionate release motions, and even assuming she has properly exhausted her remedies, she has failed to state grounds for relief. As noted, she first points to her rehabilitation efforts while in prison, but Congress has specified "that rehabilitation *alone* cannot be considered an extraordinary and compelling reason for release, [although] it may be considered as one factor among several under § 3582(c)(1)(A)." *United States v. Davis*, 99 F.4th 647, 659 (4th Cir. 2024) (citation omitted). Thus, while the court applauds Childress's efforts to better herself and obtain education and vocational skills, her rehabilitation alone cannot support a reduction in sentence. *See id.*

Childress also argues that her sentence was unduly harsh compared to her codefendants. Again, as discussed above, that is effectively an argument that the court got her sentence wrong or at least got it wrong relative to her co-defendants. But even if she were correct—which the court rejects for the reasons already discussed—the court imposing too harsh a sentence and then changing its mind is not a ground that could support compassionate release. *United States v. Bond*, 56 F.4th 381, 385 (4th Cir. 2023) ("[T]he district court's task in weighing compassionate release 'was not to assess the correctness of the original sentence imposed. Rather, its task was to determine whether the § 3553(a) factors counseled against a sentence reduction in light of the new extraordinary circumstances identified.'" (quoting *United States v. Kibble*, 992 F.3d 326, 334 (4th Cir. 2021) (Gregory, C.J., concurring)).

Childress also emphasizes the mental health and other difficulties that her teenage daughter has experienced since she has been incarcerated. Some family circumstances can constitute extraordinary and compelling grounds to render a defendant eligible for relief, and these include "the death or incapacitation of the caregiver of the defendant's minor child of the defendant's child who is 18 years of age or older and incapable of self-care because of a mental of physical disability or a medical condition." U.S.S.G. § 1B1.13(b)(3)(A).

Based on the age provided in the record, Childress's daughter is now older than 18 years old and no longer a minor child. (*See* PSR ¶ 75 (noting that her daughter was 14 in January 2020).) However, because it appears she was a minor at the time that Childress filed her initial motion and the motion has been pending for some time, the court will not rest its decision solely on the daughter's current age.

Childress's allegations about her daughter and her care reflect that the daughter has had bouts of significant mental illness, including hospitalization for about a two-month period in 2022, and another for about one month at some point in 2025. (*See generally* Dkt. No. 273-1, at

9

2–3.) Childress reports that after the 2022 hospitalization, her daughter responded to medication, gave birth to her son, and graduated from high school. Her mental health then began to decline again in April 2023, and she refused to get help. In December 2023, she was incarcerated for stealing a car. (*Id.* at 2.) In Childress's latest letter, she asserts that her daughter again (some unspecified time in 2025) was treated on an inpatient basis at a psychiatric hospital. (Dkt. No. 295, at 1.) Also in her latest letter, Childress alleges that her own adoptive parents, who had legally adopted her daughter and were caring for her, "relinquished custody in June, 2022" because they could not physically care for her considering her mental health issues. (*Id.*)

The court cannot find "extraordinary and compelling" circumstances sufficient to reduce her sentence based solely on these *allegations*, even if coupled with her demonstrated rehabilitation efforts. First of all, Childress does not explain how running her sentences concurrent (which would only reduce her sentence by three years and four months, at most) could help her daughter when Childress still would have much of her 162-month sentence left to serve. Indeed, she does not even directly ask for release to be able to care for her daughter; only for concurrent sentences. (Again, though, she states that she is in the process of obtaining all documentation required to be considered for compassionate release.)

Her allegations that custody of her child was relinquished might give rise to the requisite circumstances, though, if such relinquishment was because the caregivers were "incapacitated" and if Childress could now show that her daughter was "incapable of self-care due to a physical or mental disability." U.S.S.G. § 1B1.13(b)(3)(A). But Childress has not presented any evidence to support her assertion that her daughter is incapable of self-care. Likewise, the daughter's adoptive parents' ceding of legal custody does not necessarily mean that they are "incapable" of caring for her, although Childress alleges as much. But regardless, all the court

10

has before it is Childress's statements. Thus, Childress has failed to meet her burden to establish extraordinary and compelling circumstances rendering her eligible for a reduced sentence.

Importantly, moreover, Childress has not yet expressly filed a motion for compassionate release and has represented that she intends to do so. Because of the above deficiencies and her stated intention to file a future *supported* compassionate release motion, the court will deny her motions without prejudice to the extent they could be treated as compassionate release motions. However, nothing in this order prevents Childress from filing a future motion for compassionate release, raising this same issue, and providing appropriate documentation to support her allegations.

### III. CONCLUSION AND ORDER

For the reasons stated above, it is hereby ORDERED that Childress's motions (Dkt. Nos. 271, 272, 273) are DENIED. To the extent they can be construed as compassionate release motions pursuant to 28 U.S.C. § 3582(c)(1)(A), they are DENIED WITHOUT PREJUDICE

Entered: September 8, 2025.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
Chief United States District Judge